**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00350-CHL**

**LYZENNA R.,**[1] **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Lyzenna R. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief, and Claimant filed a reply. (DNs 14, 15, 16, 17.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

On July 12, 2017, Claimant applied for disability insurance benefits under Title II ("DIB"). (R. at 16, 52, 63, 65, 80, 146-52, 813.) Her application alleged disability beginning on May 15, 2015, due to deteriorating bone disease, degenerative disc disease, fibromyalgia, chronic obstructive pulmonary disorder ("COPD"), chest hernia, and dementia. (*Id.* at 16, 52, 65, 167.) Claimant subsequently amended her alleged onset date to August 30, 2017. (*Id.* at 16, 35, 263-65,

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

722, 813.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 83-86, 89-95.)

At Claimant's request, Administrative Law Judge ("ALJ") David A. Ettinger ("ALJ Ettinger") conducted a hearing on Claimant's application on November 6, 2019. (*Id.* at 32-50, 96-97.) ALJ Ettinger issued an unfavorable decision on January 9, 2020. (*Id.* at 13-31, 791-809.) On January 25, 2021, the Appeals Council denied Claimant's request for review of ALJ Ettinger's decision. (*Id.* at 1-7, 143-45, 266-68, 784-90.) Claimant timely filed an appeal to the U.S. District Court for the Western District of Kentucky. DN 1, *Lyzenna R. v. Comm'r*, No. 3:21-cv-187-DJH (W.D. Ky. filed Mar. 22, 2021). The court remanded the case to the Commissioner for further proceedings on November 10, 2021, based upon the Parties' joint motion for remand. DN 16, *Lyzenna R. v. Comm'r*, No. 3:21-cv-187-DJH (W.D. Ky. filed Nov. 9, 2021); DN 17, *Lyzenna R. v. Comm'r*, No. 3:21-cv-187-DJH (W.D. Ky. ent'd Nov. 10, 2021); DN 18, *Lyzenna R. v. Comm'r*, No. 3:21-cv-187-DJH (W.D. Ky. ent'd Nov. 10, 2021). On July 22, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded Claimant's case to an ALJ for further evaluation of the Claimant's residual functional capacity ("RFC"), including reevaluation of the prior administrative medical findings pursuant to the provisions of 20 C.F.R. § 404.1520c. (R. at 778-83.)

ALJ D. Lyndell Pickett ("ALJ Pickett") conducted an additional hearing on Claimant's application on November 14, 2022. (*Id.* at 730-57.) ALJ Pickett issued an unfavorable decision on November 28, 2022. (*Id.* at 810-29.) Claimant appealed ALJ Pickett's decision to the Appeals Council, who remanded the case to an ALJ for further proceedings to address certain defects in ALJ Pickett's decision. (*Id.* at 830-36, 908-14.)

ALJ Aubri G. Masterson ("ALJ Masterson") conducted an additional hearing on Claimant's application on July 18, 2023. (*Id.* at 701-29.) Claimant and her non-attorney representative appeared by telephone, and an impartial vocational expert also participated in the hearing. (*Id.* at 703, 838.) During the hearing, Claimant testified to the following. She has two to three migraines per week that last two to three days at a time. (*Id.* at 708.) Stress, overworking herself around the house, or being out in the heat can trigger her migraines. (*Id.*) She didn't have migraines before she had her first stroke. (*Id.*) When she gets a migraine, she takes medication and also has to lie down. (*Id.* at 709.) She experiences a lot of stress due to all the changes in her life. (*Id.*) She also has anxiety and is on medication for it that helps a little. (*Id.* at 710.) She doesn't like to be around people and gets nervous and shaky. (*Id.*) She no longer drives though she still has her license. (*Id.* at 711.) She experiences weakness in her arms if she stands too much and cannot hold her arms up long enough to wash her hair in the shower. (*Id.* at 712.) She estimated she could walk for fifteen to twenty minutes before she would need to sit down and rest and sit for an hour before she would need to stand up. (*Id.* at 713.) Sitting too long is hard on her back due to her fibromyalgia. (*Id.*) Her medications make her sleepy. (*Id.*) She also experiences dizziness and forgetfulness. (*Id.* at 714.) She keeps a cane nearby in case she needs it. (*Id.*) The heaviest thing she estimated she could lift was a gallon jug. (*Id.* at 715.) She cannot read anymore and ends up reading the same lines over and over; instead, her husband reads to her. (*Id.* at 715-16.) She has issues with her memory. (*Id.* at 716-17.) She experiences flare ups of her fibromyalgia ten or eleven times per month that sometimes last for a day or two. (*Id.* at 718-19.) When she has a flare up, she takes gabapentin and either lies down for a few hours or walks around in a circle to relieve her pain. (*Id.* at 719.) Her COPD causes constant pain in her chest and back.

(*Id.*) Her husband helps her with cleaning. (*Id.* at 721.) She smokes five or six cigarettes per day. (*Id.*)

ALJ Masterson issued an unfavorable decision on October 2, 2023. (*Id.* at 677-700.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, ALJ Masterson made the following findings. First, the Claimant had not engaged in substantial gainful activity during the period from her alleged onset date of August 30, 2017, through her date last insured of December 31, 2018. (*Id.* at 683.) Second, Claimant had severe impairments including degenerative disc disease, COPD, calcified coronary artery disease, stroke/cerebrovascular disease, migraines headaches, and neurocognitive disorder. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Fourth, Claimant had the RFC to perform light work with the following exceptions:

> she can frequently climb ramps and stairs but she cannot climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can perform indoor work only with occasional exposure to fumes, odors, dusts, gases, and poor ventilation. She can have no exposure to temperature extremes, humidity, vibration, or hazards such as unprotected heights, dangerous machinery, or driving. She is limited to simple and routine work where instruction can be both written and demonstrated. She can tolerate frequent interaction with coworkers and supervisors and occasional interaction with the public. She can adapt to workplace changes that are slowly and gradually introduced.

(*Id.* at 685.) Additionally at step four, ALJ Masterson found that Claimant was unable to perform any of her past relevant work as a "cashier-checker" or waitress. (*Id.* at 691.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) ALJ Masterson concluded that Claimant was not under a disability from August 30, 2017, through her date last insured of December 31, 2018. (*Id.* at 692.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on May 1, 2025. (*Id.* at 669-76, 987-95.) At that point, ALJ Masterson's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on June 11, 2025. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2025).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B. Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 404.1520 (2025). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509 (2025).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

**C. Claimant's Contentions**

Claimant alleged that ALJ Masterson erred in two ways in determining her RFC. First, she alleged that ALJ Masterson's evaluation of the opinion of Jane Brake, Ph.D., ("Dr. Brake") did not comport with 20 C.F.R. § 404.1520c. (DN 15, at PageID # 1795, 1811-14; DN 17, at PageID # 1827-29.) Second, she argued that ALJ Masterson's determination of her RFC did not properly account for the moderate limitations on her ability to concentrate, persist, and maintain pace that had been found at earlier steps. (DN 15, at PageID # 1795, 1806-11; DN 17, at PageID # 1825-26.) The Court will address each of these arguments separately below.

**1. Dr. Brake's opinion**

Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. § 404.1520c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 404.1527(c)(2) (2025).

supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[4] specialization, and other factors.[5] 20 C.F.R. § 404.1520c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3).

The Sixth Circuit has not elucidated a specific standard aside from the text of the regulation to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 404.1520c(b). *But see Gregory v. Comm'r of Soc. Sec.,* No. 26-5022, 2026 WL 1763752, at *2 (6th Cir. June 18, 2026) (quoting in part 20 C.F.R § 404.1520c(b)(2)) ("To pass muster, the ALJ need only explain 'how [he] considered the supportability and consistency factors for a medical source's medical opinions.' "); *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813,

[4] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5).

822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Dr. Brake opined as to Claimant's mental RFC at the reconsideration level on May 14, 2018. (R. at 75-77.) Dr. Brake found that Claimant had a moderate limitation on her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public.

(*Id.* at 75-76.) In support, Dr. Brake noted a January 2018 MRI that showed white matter changes and small vessel disease as well as the results of follow up neuropsychological testing "where [Claimant's] effort was so poor that the validity of the testing was suspect." (*Id.* at 77.) Dr. Brake further opined that Claimant remained able to:

> A. Understanding and Memory: Understand and recall simple, familiar work instructions and procedures, requiring brief learning periods, usually 30 days or less. Can perform simple duties in standardized situations with minimal variation.
>
> B. Sustained Concentration and Persistence: Sustain attention, concentration and persist at simple familiar tasks requiring little or no judgment and involving minimal variations for extended periods of two-hour segments.
>
> C. Social Interaction: Interact frequently as needed with supervisors and peers sufficiently for task completion, and involving interaction with the public on an occasional basis, nearly 1/3 of the time. Can be expected to work better with things than with people.
>
> D. Adaption: Can respond appropriately to changes in a routine works setting and can avoid hazards.

(*Id.*) ALJ Masterson found Dr. Brake's opinion persuasive "in part." (*Id.* at 690.) ALJ Masterson summarized Dr. Brake's opinion and then noted that it was consistent with the medical evidence. ALJ Masterson wrote, "While [Claimant] has experienced some memory and concentration deficits, as noted by the consultative examiner, her low scores on testing appeared to be the result of limited effort as she gave up easily and was unwilling to guess. She also failed to follow instructions." (*Id.*) ALJ Masterson cited a third party function report from Claimant's mother that indicated no issues with memory, concentration, and understanding and that Claimant could pay attention "as long as it takes." (*Id.* (citing *id.* at 181).) ALJ Masterson also cited Claimant's own function report in which Claimant marked she had problems with concentration but when asked how long she could pay attention, she wrote "NA" and stated she could finish what she started. (*Id.* at 690 (citing *id.* at 199).) ALJ Masterson noted that both of those forms were completed

around the time of Claimant's first stroke such that her "cognitive functioning may have declined in the interim, but once again, the treatment since that time remained routine and the only in depth examination at Exhibit 11F concludes she has no more than moderate limitations in that area." (*Id.*)

Claimant argued that ALJ Masterson did not properly evaluate Dr. Brake's opinion. (DN 15, at PageID # 1795, 1811-14; DN 17, at PageID # 1827-29.) Specifically, she argued that ALJ Masterson failed to specify which portions of Dr. Brake's opinion that she found persuasive and unpersuasive. (DN 15, at PageID # 1812; DN 17, at PageID # 1827.) She contended that the medical evidence supported greater limitations in maintaining concentration, persistence, and pace than ALJ Masterson found, including support for Dr. Brake's limitation of Claimant to performing tasks in two-hour segments. (DN 15, at PageID # 1813.) But she cited no authority requiring an ALJ to do a limitation-by-limitation analysis of a medical source's medical opinion. ALJ Masterson here found Dr. Brake's opinion only persuasive in part and while ALJ Masterson did not specifically discuss the portion of Dr. Brake's opinion wherein Dr. Brake limited Claimant to performing work in two-hour segments, ALJ Masterson did not include such a limitation in her RFC determination; this combined with the fact that Dr. Brake's opinion was found only "persuasive in part" is sufficient to constitute a rejection of that portion of ALJ Masterson's opinion. The only question is whether ALJ Masterson's analysis sufficiently supports that rejection. The Court finds that it does. The findings and medical evidence cited above support ALJ Masterson's rejection of a limitation of that scope. Though Claimant's brief contains a discussion of the medical evidence, it does not highlight much evidence specific to support concentration and persistence limitations. For example, Claimant cited to an April 30, 2018, consultative examination by Greg Lynch, Ph.D., ("Dr. Lynch") in which Dr. Lynch documented

distractable attention and preoccupied concentration. (R. at 517.) Dr. Lynch opined that Claimant's ability to "sustain attention and concentration towards performance of simple repetitive tasks" was affected by her impairments "with slight to moderate limitations noted." (*Id.* at 521.) But Dr. Lynch did not limit Claimant to performing tasks in two-hour segments like Dr. Brake and his opined limitations were *slight* to moderate, implying they were lesser than Dr. Brake's moderate ones. Thus, Claimant has not demonstrated Dr. Lynch's opinion supports either Dr. Brake's two-hour task limitation or greater limitations than imposed by ALJ Masterson. ALJ Masterson jointly considered Dr. Brake's and Dr. Lynch's opinions in her decision, and Dr. Lynch's was the consultative examination at Exhibit 11F referenced by ALJ Masterson in the language quoted above, indicating that she believed her same analysis applied to both opinions. On these facts, Claimant has failed to justify reversal under substantial evidence review, particularly where an ALJ has provided a sufficient discussion to satisfy the regulatory articulation requirements as ALJ Masterson has done here. *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. For all these reasons, the Court finds that ALJ Masterson's discussion of Dr. Brake's opinion and rejection of her two-hour segment limitation is sufficient to comport with both 20 C.F.R. § 404.1520c and supported by substantial evidence.

**2. Paragraph B Limitations and the RFC**

Claimant's remaining argument is that ALJ's Masterson's RFC did not account for mental limitations ALJ Masterson found at earlier steps of her analysis. (DN 15, at PageID # 1795, 1806-11; DN 17, at PageID # 1825-26.) Specifically, Claimant argued that ALJ Masterson's determination of Claimant's RFC does not account for the moderate limitation on her ability to maintain concentration, persistence, and pace that ALJ Masterson found at step two of the five-step sequential evaluation process. (DN 15, at PageID # 1807.)

Claimant's argument invokes the distinction between steps two, three, and four of the sequential evaluation process. When evaluating a claimant's mental impairments at steps two and three of the sequential evaluation process, the regulations require an ALJ to follow a special technique known as the psychiatric review technique ("PRT"). 20 C.F.R. § 404.1520a (2025). Specifically, after evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: an individual's ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage oneself. *Id.* at § 404.1520a(b)-(c). These four areas are commonly referred to as the "paragraph B" criteria as they parallel the criteria of paragraph B of the adult mental disorders listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b) (effective Mar. 27, 2017 to Aug. 21, 2017). But the PRT is distinct and different from the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). The listings provide examples of the functions associated with each of the paragraph B criteria. For example, as to the paragraph B criteria regarding concentrating, persisting, or maintaining pace, the listings explain:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3). By contrast, an ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c) (2025). It must address "the remaining exertional and nonexertional capacities of the" claimant—with exertional capacity referring to limitations related to physical strength and nonexertional capacity referring to non-strength-related physical and mental limitations—as well as a claimant's "ability to tolerate various environmental factors." SSR 96-8p, 61 Fed. Reg. at 34477.

Here, at step two, ALJ Masterson found that Claimant had a moderate limitation on her ability to concentrate, persist, or maintain pace and stated that her RFC finding reflected the degree of limitation she had found. (R. at 684-85.) Her RFC finding limited Claimant to "simple and routine work where instruction can be both written and demonstrated" and "frequent interaction with coworkers and supervisors and occasional interaction with the public." (*Id.* at 685.) It also indicated that Claimant could "adapt to workplace changes that are slowly and gradually introduced." (*Id.*) In her RFC determination itself, ALJ Masterson explicitly referenced the relationship between her PRT/paragraph B findings and her RFC determination, writing, "[T]he undersigned has found moderate limitations in [Claimant's] ability to understand, remember, and apply information and sustain concentration, persistence, and pace. These limitations are

accounted for by a restriction to simple and routine work with slow and gradual workplace changes." (*Id.* at 689.)

Claimant challenged ALJ Masterson's reasoning as insufficient. She argued that ALJ Masterson's limitation to "simple and routine work" was insufficient to accommodate her moderate limitations in concentrating, persisting, and maintaining pace, citing *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516-17 (6th Cir. 2010). (DN 15, at PageID # 1807-08.) In *Ealy*, the Sixth Circuit held that a hypothetical an ALJ posed to a vocational examiner that limited Ealy to "simple, repetitive tasks and instructions in non-public work settings" did not accurately portray Ealy's physical and mental impairments because it did not include limitations posed by the state agency consultant that Ealy could "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical," limitations "that both the [state agency] [psychological consultant] and the ALJ found Ealy to have." *Ealy*, 594 F.3d at 509, 516. Here, by contrast and as set forth above, ALJ Masterson rejected Dr. Brake's finding that Claimant could perform tasks in two-hour segments; thus, *Ealy* is non-dispositive of whether ALJ Masterson was required to incorporate that limitation into her finding of Claimant's RFC. As Claimant concedes, other Sixth Circuit cases have found that moderate limitations in concentrating, persisting, and maintaining pace can be accounted for by limitations to simple and routine work. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."). And ALJ Masterson explicitly stated in her decision that such a limitation was designed to address Claimant's concentration, persistence, and pace limitation. Thus, the Court finds Claimant's

attempt to repackage her argument that ALJ Masterson should have adopted Dr. Brake's opinion in full unavailing for the same reasons set forth above.

Claimant also argued that "slow and gradual workplace changes" is actually related to a limitation on her ability to adapt and manage herself, not her ability to concentrate, persist, and maintain pace." (DN 15, at PageID # 1808-09.) But even assuming for the sake of argument that the same is true, ALJ Masterson did include limitations related to the degree of limitation she found on Claimant's ability to concentrate, persist, and maintain pace so the fact that the secondary limitation she mentioned was not related would be nondispositive of the result. Claimant simply has not demonstrated that greater limitations were required than those imposed by ALJ Masterson. The Court finds ALJ Masterson's RFC determination supported by substantial evidence and properly reflective of the degree of limitation that ALJ Masterson found on Claimant's ability to concentrate, persist, or maintain pace at step two.

## III. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record

September 24, 2026